**William HUNTER, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, etc.,
Defendant–Appellee.**

No. 92–1378.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 2, 1992.

Decided Dec. 18, 1992.

Amended by Order Filed May 5, 1993.

James Allen Mayhew, Legal Aid Bureau, Inc., Baltimore, MD, argued (Leah J. Seaton, on brief), for plaintiff-appellant.

Patricia McEvoy Smith, Asst. Regional Counsel, Office of Gen. Counsel, Dept. of Health and Human Services, Philadelphia, PA, argued (Eileen Bradley, Chief Counsel, Region III, Office of the General Counsel, Dept. of Health and Human Services, Philadelphia, PA, Richard D. Bennett, U.S. Atty., Larry D. Adams, Asst. U.S. Atty., Baltimore, MD, on brief), for defendant-appellee.

Before RUSSELL and HAMILTON, Circuit Judges, and TRAXLER, United States District Judge for the District of South Carolina, sitting by designation.

## OPINION

PER CURIAM:

William Hunter (Hunter) appeals from the decision of the district court upholding the Secretary of Health and Human Services' (the Secretary) denial of Hunter's application for Supplemental Security Income (SSI) benefits. Because the Secretary's decision was supported by substantial evidence, we affirm.

### I.

Hunter was born on January 14, 1947, and is now 45 years old. He has a seventh grade education and has been homeless for the past two or three years. Hunter's homelessness

allegedly arose as a result of losing his apartment and car after spending time in jail for breach of the peace.

On October 9, 1986, Hunter filed an application for SSI benefits, alleging that he had been disabled since 1979 as a result of injuries to his back, neck, shoulder, and arm. The state agency in charge of Hunter's claim rejected it because he had failed to submit any medical evidence. Hunter's reconsidered application was also denied. On June 7, 1987, Hunter filed a request for a hearing in front of an Administrative Law Judge (ALJ).

After a hearing on May 19, 1988, the ALJ denied Hunter's application for benefits on September 28, 1988. The Appeals Council granted Hunter's request for review of the hearing decision and remanded the case back to the ALJ for further development of the medical evidence. On remand, a new ALJ conducted a hearing on January 11, 1990.

Both sides introduced extensive medical evidence at this hearing. This evidence consisted of conflicting testimony concerning Hunter's condition.

Dr. Kenneth Lippman, Hunter's treating physician between November of 1986 and March of 1987, diagnosed lumbar strain and disc profusion. Dr. Neal Aronson, a referral from Dr. Lippman, examined Hunter on October 23, 1986, and recommended back surgery to relieve Hunter's pain. Dr. Eli Lippman, a co-worker of Dr. Kenneth Lippman, performed a physical functional capacity assessment and concluded that Hunter could sit for a total of four hours during an eight-hour day, could stand a total of two hours during a eight-hour day, could lift or carry up to 25 pounds occasionally, could walk a total of three hours during an eight-hour day, could use his limbs for repetitive movements as in pushing and pulling, and found mild to moderate restriction of activities. Dr. Stuart Levine, a referral from Dr. Lippman, examined Hunter's x-rays and noted marked narrowing between vertebrae and moderate scoliosis of the lumbar spine to the left. Dr. Robert Draper, a nontreating physician, examined Hunter on July 24, 1989, and concluded that Hunter was "basically . . . devoid of any specific orthopedic pathology." Dr. Draper's physical assessment of ability to do work-related activities concluded that lifting, carrying, sitting, standing, and walking were not affected by Hunter's impairments. He also concluded that Hunter could stand and/or walk for a total of eight hours during an eight-hour work day, that no physical functions were affected by Hunter's impairments, and that there were no environmental restrictions caused by the impairment. Dr. Matthew Celozzi, a nontreating clinical psychologist, examined Hunter on November 1, 1989. Dr. Celozzi concluded in his medical assessment of Hunter's ability to do work-related activities that Hunter possessed good to fair ability [1] to adjust to job conditions. Dr. Celozzi's rating concerning Hunter's ability to make performance adjustments on a job were "very good" for three categories, and "good" for one category. Dr. Celozzi's ratings for Hunter's ability to make personal-social adjustments were "fair" in every category. Dr. Milton Buschman, a nontreating psychiatrist, examined Hunter on October 17, 1989. He concluded that Hunter had a dysthymic disorder [2] and a probable personality disorder with some paranoid aspects. Dr. Buschman's psychiatric review technique form classified Hunter's disorders under 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04 (affective disorders) and 12.08 (personality disorders). Dr. Buschman also found slight to moderate limitation involving difficulties in maintaining social functioning. Finally, Dr. Jesse Holmes, Hunter's treating physician between 1982 and 1986, diagnosed low back injury, injury to left shoulder, neck injury, old fractured right hip, edema in lower legs, and hypertension. He concluded that the "prognosis is guarded and the patient will need ongoing treatment for these conditions."

---

1. A rating of fair is defined on the form as: "[a]bility to function in this area is seriously limited, but not precluded." A rating of good is defined as: "[a]bility to function in this area is limited, but satisfactory."

2. A dysthymic disorder is a chronic disturbance of mood involving depressed mood a majority of the time.

At the hearing, Hunter testified that he suffers from a constant, sharp pain that is aggravated by walking or standing. He testified that once the pain starts, he must stay off his feet until the pain goes away. In addition, Hunter was hospitalized in 1987 for fluid build-up in his leg, which currently hinders him when he walks.

Although Hunter claimed that he was disabled since 1979 from injuries related to various accidents, he worked, nevertheless, at several jobs through at least December of 1989. Hunter's last job was as a general laborer at the Smith Sand & Gravel Company, which he was forced to quit as the result of an altercation with his co-workers. Prior to 1989, Hunter was employed as a poultry cleaner for three years, around 1985, and as a handyman in 1982 and 1983. Hunter's prior work experience, in general, included such jobs as a tow truck driver, oil truck driver, cab driver, construction worker, poultry cleaner, and home improvement carpenter.

With respect to his mental disorders, Hunter has difficulty getting along with authority figures. He was arrested twice in 1989 for disturbing the peace. As noted above, he left his last job as a result of a fight with his co-workers.

Martin Kranitz, a vocational expert, also testified at the hearing. Kranitz testified that an individual with the characteristics described in Dr. Celozzi's and Dr. Lippman's reports "would be precluded from any type of work." In addition, although some homeless people have no difficulty working as a result of their homelessness, Kranitz testified that with respect to Hunter, "[t]here may be some social or interpersonal kinds of things where the people just don't hire this man because of the way he presents in some way, and that is a realistic negative vocational factor." Kranitz also testified, however, that if his evaluation was based on the facts set forth in Dr. Draper's report, such an individual would be able to perform work such as taxi driver, dump truck driver, or tow-motor operator.

In a decision dated February 22, 1990, the ALJ denied Hunter's claim for benefits. The ALJ determined that Hunter's physical and mental conditions did not preclude him from returning to his former employment as a taxi or bus driver. In reaching this decision, the ALJ specifically found that either of these jobs would not require Hunter to lift more than ten pounds frequently, twenty pounds occasionally, or to stand or walk more than six hours in an eight-hour day. The Appeals Council denied Hunter's request for review of the ALJ's decision, which became the final decision of the Secretary.

Hunter appealed the decision to the district court pursuant to 42 U.S.C. § 405(g). By memorandum and order dated January 31, 1992, the District Court found that the Secretary's denial of benefits was supported by substantial evidence, and affirmed. Hunter filed an appeal with this Court pursuant to 42 U.S.C. § 405(g) and Fed.R.App.Pro. 4(a)(1).

## II.

■ Our review of a denial of SSI benefits is limited to a determination of whether the Secretary's decision was supported by substantial evidence. 42 U.S.C. § 405(g); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971). In *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966), this Court stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" It is not our place either to weigh the evidence or to substitute our judgment for that of the Secretary if that decision was supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990).

■ In making his decision on Hunter's claims, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920 (1992). Under the regulations, the ALJ must consider whether a claimant (1) is

working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past work, and (5) if not, whether he can perform other work. *Id.* If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step. *Id.* Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker,* 699 F.2d 189, 191 (4th Cir.1983). If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience. *Id.*

### III.

■ The ALJ determined in this case that Hunter had failed to demonstrate that he was unable to return to his past work as a taxi or bus driver. There was substantial evidence in the record to support the ALJ's conclusion. The physical requirements of these jobs are not inconsistent with the medical evidence presented in this case.

■ In deciding against Hunter, the ALJ gave more weight to Dr. Draper's testimony. This was proper in light of the fact that Dr. Draper's report was prepared in 1989, three years after Dr. Kenneth Lippman's evaluation and Dr. Eli Lippman's report, and may reflect more accurately Hunter's condition. Hunter contends, however, that according Dr. Draper's report greater weight violated the treating physician rule.

Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight. *Campbell v. Bowen,* 800 F.2d 1247, 1250 (4th Cir.1986).

The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence, as here in Dr. Draper's evaluation. *Foster v. Heckler,* 780 F.2d 1125, 1127 (4th Cir.1986). Therefore, the ALJ was within his discretion in giving Dr. Draper's testimony greater weight than the conflicting reports.

Hunter's continued work activities and daily physical activities also support the ALJ's conclusion that Hunter had failed to prove he was unable to return to his former work as a taxi or bus driver. The ALJ noted that Hunter "stopped working due to a layoff rather than any physical or psychiatric impairment." Indeed, Hunter's own testimony establishes that he left his prior employment due to an altercation with his co-workers. These facts constitute substantial evidence supporting the ALJ's conclusion that Hunter could return to his former work.

The ALJ's conclusion that Hunter's mental impairments do not qualify him for benefits is also supported by substantial evidence. Dr. Buschman concluded that Hunter's functional limitations did not meet any of the criteria listed in the regulations for mental impairments. The ALJ properly found that Hunter had the psychological symptoms necessary to satisfy the requirements for both affective and personality disorders under 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04(A), 12.08(A) (1992). The ALJ, however, relying on Dr. Buschman's conclusions, found that Hunter's impairments did not meet the criteria set forth in Sections 12.-04(B) and 12.08(B) of the regulations, which set forth the criteria for evaluating degree of severity of limitation.[3] The ALJ correctly evaluated Hunter's impairments under the regulation's analysis, 20 C.F.R. § 416.920(a) (1992), and concluded that Hunter's mental impairments were not disabling. Dr. Busch-

---

3. In order to satisfy the regulations for mental impairments, a claimant must demonstrate that he is severely impaired in two of the following for purposes of section 12.04, and three of the following for section 12.08:
    1. Marked restriction of activities of daily living;
    2. Marked difficulties in maintaining social functioning;
    3. Frequent deficiencies of concentration, persistence or pace resulting in frequent fail-

ure to complete tasks in a timely manner (in work settings or elsewhere); or
    4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).
20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04(B), 12.08(B) (1992).

man's conclusion constitutes substantial evidence supporting the ALJ's decision, and therefore the ALJ did not err in concluding that Hunter's mental impairments did not preclude him from returning to his former work.

Finally, Hunter contends that the ALJ failed to accord his subjective complaints of pain adequate consideration. The ALJ considered Hunter's complaints in reference to Social Security Ruling 88–13, however, which provides guidelines for the evaluation of subjective complaints of pain. These criteria include: the strength of pain medication, ongoing treatment for pain, and daily activities. Social Security Ruling 88–13, however, has been replaced by Ruling 90–1(b), *Evaluation of Pain and Other Symptoms*, 55 Fed.Reg. 31,898 (Aug. 6, 1990). This ruling requires an adjudicator to consider subjective testimony concerning pain if a "physical or mental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence." *Id.* The ALJ in this case concluded the evidence suggested that Hunter did not have such an impairment. In such a case, Ruling 90–1(b) requires that the adjudicator consider the factors listed above, among others. The ALJ's conclusion that Hunter's complaints of pain were not consistent with the evidence, when evaluated under the Ruling's factors, is supported by substantial evidence. The medication originally prescribed to Hunter is described as medication for the relief of mild to moderate pain. In addition, even when prescribed pain medication, Hunter failed to fill the prescription—an action leading at the least to the inference that there was no significant pain. Hunter also discontinued his physical therapy sessions, failed to sustain a consistent medical regimen for treatment of back pain, and required no hospitalizations for back pain. The ALJ's determination that Hunter's subjective complaints of pain did not comport with the evidence is supported by substantial evidence and is an acceptable credibility determination based upon specific evidence in the record. *See Smith v. Schweiker*, 719 F.2d 723, 723 n. 2 (4th Cir. 1984).

## IV.

For the foregoing reasons, we conclude that the Secretary's denial of benefits in this case is supported by substantial evidence. Accordingly, the decision of the district court is hereby

*AFFIRMED.*