28 F.3d 1210
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Robert J. RANSOM, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-2060.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 9, 1994.
Decided: July 18, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Fayetteville. W. Earl Britt, District Judge. (CA-92-85-3-BR)
 Argued: Charles Terry Hall, Hall & Joneth, P.C., Raleigh, NC, for appellant.
 Barbara Dickerson Kocher, Special Asst. U.S. Atty., Raleigh, NC, for appellee.
 On brief: James R. Dedrick, Asst. U.S. Atty., Raleigh, NC, for appellee.
 E.D.N.C.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WILKINSON and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The district court affirmed in part and remanded in part the Administrative Law Judge's ("ALJ") denial of Appellant's application for disability benefits. We affirm.
 
 
 2
 * Appellant Robert Ransom ("Ransom") applied for disability benefits in 1982 and again in 1990. These claims were denied. Ransom requested an administrative hearing, which was scheduled before ALJ Nathanson. Several days before the hearing, Ransom's nonlawyer representative wrote a letter to ALJ Nathanson withdrawing from her representation of Ransom, stating in part:
 
 
 3
 Your Honor, it is very important to me that my work exemplify the highest degree of integrity.... I regret that this decision was not made earlier. However information made available to me this date resulted in a decision of conscience.
 
 
 4
 (J.A. at 5.) The hearing was continued and, due to the rescheduling, was heard by ALJ Dugan instead of ALJ Nathanson.
 
 
 5
 At the hearing, Ransom's counsel noted his concern that ALJ Dugan's questioning of Ransom suggested that Dugan had information of which counsel was unaware. Suspecting that Ransom's prior representative had contacted the ALJ, counsel later requested that Dugan recuse himself. ALJ Dugan subsequently issued an order denying Ransom's claim for disability benefits. In his decision, Dugan noted that the request to recuse was denied, and stated that:
 
 
 6
 at attorney's request ... the prior representative's withdrawal letter submitted to Administrative Law Judge Saul W. Nathanson was located and made a part of the record.... This letter was not previously communicated to me.
 
 
 7
 (J.A. at 22.)
 
 
 8
 Ransom appealed ALJ Dugan's decision to the Appeals Council, which vacated the decision and remanded the case for a new hearing on grounds unrelated to the withdrawal letter. On remand, a new hearing was held before ALJ Haynes, who denied Ransom's claim for benefits. The Appeals Council denied review, and Ransom filed suit in district court.
 
 
 9
 The district court held that substantial evidence supported ALJ Haynes' finding that Ransom was engaged in substantial gainful activity between January 1985 and May 1988, and from June 1988 to the date of the ALJ's decision. It therefore affirmed the ALJ's decision that Ransom was not eligible for disability benefits during these two periods. As to the period from April 1980 to December 1984, the court remanded to the ALJ to consider whether Ransom had a listed impairment and whether he was able to perform sedentary work.
 
 II
 
 10
 Ransom contends that the ex parte letter from Ransom's prior representative to the ALJ resulted in procedural improprieties which require a new hearing. We disagree. The prior representative sent the letter to ALJ Nathanson, the ALJ originally assigned to the case, not ALJ Dugan, the ALJ who presided over the first hearing. Moreover, ALJ Dugan stated in his decision that he did not have the letter prior to rendering his decision, and he included the letter in the record. Even assuming that the letter tainted the first hearing, Ransom's procedural rights were not violated. The Appeals Council vacated ALJ Dugan's decision on other grounds, and Ransom received a new hearing before a different ALJ.
 
 III
 
 11
 Ransom challenges the ALJ's conclusion that he engaged in substantial gainful activity from May 1988 to the date of the ALJ's decision.* This Court's review of Ransom's claim is "limited to a determination of whether the Secretary's decision was supported by substantial evidence." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992) (citing 42 U.S.C. Sec. 405(g) (other citation omitted)). Substantial evidence " 'consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.' " Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966) (citations omitted)).
 
 
 12
 "[I]f a claimant is 'able to engage in substantial gainful activity,' he will be found to be not disabled." Payne v. Sullivan, 946 F.2d 1081, 1082 (4th Cir.1991) (quoting 20 C.F.R. Sec. 404.1571 (1991)). From May 1988 to the date of the ALJ's decision, Ransom's only possible such activity was the work he performed for a trucking company that he owned. To determine whether this self-employment was substantial gainful activity, the regulations require consideration of Ransom's activities and its value to his business. 20 C.F.R. Sec. 404.1575(a). The regulations provide, in part, that a self-employed person is engaged in substantial gainful activity if he "render[s] services that are significant to the operation of the business and receive[s] a substantial income from the business," Id. Sec. 404.1575(a)(3). "Significant services" is defined, in part, as "contribut[ing] more than half the total time required for the management of the business, or ... render[ing] management services for more than 45 hours a month regardless of the total management time required by the business." Id. Sec. 404.1575(b)(1).
 
 
 13
 Ransom concedes that he received substantial income during most of the relevant time period, but contends that he did not contribute services significant to the operation of the business. Ransom asserts that although he owned the business, he was essentially a passive investor and that his daughter, who was studying business in college and graduate school, managed it almost completely. Ransom's daughter testified that she worked ten or fifteen hours per week and that her father worked a "very small" fraction of that amount.
 
 
 14
 The ALJ did not credit Ransom and his daughter's testimony respecting Ransom's participation in the business. The ALJ concluded that the company depended entirely upon Appellant's knowledge of the trucking business. The ALJ also found that Appellant's knowledge of detail about his company was inconsistent with his claims regarding the amount of time that he worked. In addition, the ALJ credited the statements by a representative of the company's principal client, Watkins Motor Lines ("Watkins"), indicating that Watkins dealt more often with Appellant Ransom than with Appellant's daughter. The ALJ therefore concluded that Ransom contributed significant services to the business.
 
 
 15
 Our review of the record reveals substantial evidence to support the ALJ's conclusion. Ransom testified that he knew the trucking business from his previous jobs as a shipping clerk and dispatcher, and as a bookkeeper for two trucking businesses. He entered the business through these contacts. Ransom testified in detail about the manner in which his trucks are dispatched and maintained, and how his drivers are compensated. He also testified in detail respecting the flow of paperwork and payment from Watkins to his business.
 
 
 16
 The record also indicates inconsistent answers by Ransom and his daughter respecting the extent of his involvement in the business. Not only did Ransom and his daughter give conflicting answers, but Ransom's answers at the second hearing differed from answers he had previously given. Moreover, Gene Johnson, the general manager of Watkins, stated that he dealt only with Ransom on matters other than dispatches, and usually spoke to him twice per week on such matters. Johnson also stated that Ransom and his daughter probably split the dispatching evenly between them.
 
 
 17
 In light of this evidence, and the record as a whole, we find substantial evidence to support the ALJ's conclusion that Ransom contributed substantial services to the company.
 
 IV
 
 18
 Ransom also raises claims with respect to the district court's remand of the ALJ's decision regarding the time period between April 1980 and December 1984. Because Ransom's request for benefits as to this time period is currently on remand at the administrative level, we decline to address these claims.
 
 
 19
 Accordingly, the judgment of the district court is
 
 
 20
 AFFIRMED.
 
 
 
 *
 In his initial brief, Ransom also raised this challenge with respect to the time period between January 1985 and November 1985. He abandoned this claim in his reply brief