39 F.3d 1177
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Teddy W. MORTON, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 94-1340.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 30, 1994.
Decided Nov. 4, 1994.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Winston-Salem. William L. Osteen, Sr., District Judge. (CA-92-227).
 ARGUED: H. Russell Vick, Greensboro, NC, for appellant.
 Cheryl L. Nikonovich-Kahn, Asst. Regional Counsel, Office of the Chief Counsel, Department of Health and Human Services, Atlanta, GA, for appellee.
 ON BRIEF: Frank W. Hunger, Asst. Atty. Gen., Walter C. Holton, Jr., U.S. Atty., Bruce R. Granger, Chief Counsel, Region IV, Mack A. Davis, Deputy Chief Counsel for Social Security Litigation and Programs, Mary Ann Sloan, Principal Regional Counsel, Social Security Disability Litigation, Haila N. Kleinman, Supervisory Assistant Regional Counsel, Office of the Chief Counsel, Department of Health and Human Services, Atlanta, GA, for appellee.
 M.D.N.C.
 AFFIRMED.
 Before HAMILTON and LUTTIG, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Teddy W. Morton appeals from the decision of the United States District Court for the Middle District of North Carolina, upholding the decision of the Secretary of Health and Human Services ("Secretary"). This appeal, filed pursuant to 42 U.S.C. Sec. 405(g), followed. Because the determination by the Secretary was supported by substantial evidence, we affirm.
 
 
 2
 Claimant Morton was born on August 6, 1930. He has a high school equivalency diploma and for 23 years he worked as a yarn supervisor in a textile mill. Morton claims to have been disabled since September 16, 1987 due to preinfarction syndrome, chronic obstructive pulmonary disease ("COPD"), costchronditis, and anxiety. His claim is to the effect that his disability has precluded his being engaged in substantial gainful activity since September 16, 1987.
 
 
 3
 Prior to that date, Morton had been hospitalized three times for chest problems and was diagnosed by Dr. Zarate, his treating physician, as suffering from COPD and preinfarction syndrome. He was advised by his doctor at that time to take a number of medicines and to stop smoking. Morton was hospitalized again in October of 1987, complaining of chest pains, shortness of breath and lack of energy.
 
 
 4
 His diagnosis at that time was that the pain was caused by esophageal disease. He was started on Cardiazem and his prognosis was good. In November of 1987, Dr. Zarate advised Morton that he could return to work. In January of 1988, he was diagnosed with mild obstructive lung disease, and in February of 1989, Dr. Zarate wrote a letter stating that Morton was totally disabled and had been since September of 1987. In April of 1989, Dr. Zarate's conclusion was supported by a Dr. Mendoza, a general surgeon.
 
 
 5
 Morton had a hearing before the Administrative Law Judge in May of 1989, at which time he complained of pain in his legs, hips and chest, shortness of breath, hand cramps when writing, difficulty sitting for long periods, or walking great distances. The evidence at that time reflected that Morton helped his wife with household chores including washing dishes, vacuuming floors, and driving her to the grocery store.
 
 
 6
 At the second hearing before the ALJ, occasioned by the fact that the Appeals Counsel had remanded the original decision denying Morton's claim, the ALJ once again denied his claim. That hearing revealed that in April of 1991, Morton had been examined by a board psychiatrist and neurologist who submitted a letter to the ALJ reporting that Morton had been dysfunctional since his cerebral vascular accident (stroke) in May of 1984. The letter, signed by a Dr. Badawi, went on to say that "during the last three years [Morton] has shown marked restrictions in his activities of daily living; marked constrictions of interests and repeated failure to perform tasks." The doctor's final diagnosis was that Morton was suffering from major depressive disorder, which was treatable with antidepressants and therapy.
 
 
 7
 To qualify for Social Security benefits, a claimant must establish that he is "disabled" as defined in the Social Security Act, 42 U.S.C. Sec. 423(d). That section defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."
 
 
 8
 In his final decision, the ALJ determined that of all Morton's complaints, only the COPD was "severe." See 20 C.F.R. Secs. 404.1520(d), 404 Supt. P., App. 1 (1991). Under the regulations, the Secretary must determine if the impairment is severe, and if so, even though it does not meet the criteria in the agency listing, the Secretary is bound to examine whether the claimant retains the "residual functional capacity" to perform "past relevant work." 20 C.F.R. Sec. 404.1520(e) (1991). Upon a finding that the claimant is able to perform past relevant work, the Secretary must conclude that he is not disabled.
 
 
 9
 The ALJ examining the claimant's residual functional capacity determined that Morton retained the ability to perform work at the light exertional level, which included his past relevant work. Concluding that Morton had the capacity to perform his past relevant work, the ALJ found that Morton was not suffering a disability. That finding was reviewed in the district court wherein the magistrate judge found no merit to Morton's contentions and recommended the Court uphold the findings of the ALJ and grant the Secretary's motion for judgment on the pleadings.
 
 
 10
 After a thorough review of Morton's objections to the recommendation, the court affirmed and adopted the ruling of the magistrate judge. This appeal followed.
 
 
 11
 Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir.1993), stated as follows:
 
 
 12
 Our review of a denial of ... benefits is limited to a determination of whether the Secretary's decision was supported by substantial evidence. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." In Laws v. Celebrezze, this Court stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.' " It is not our place either to weigh the evidence or to substitute our judgment for that of the Secretary if that decision was supported by substantial evidence.
 
 
 13
 Morton argues that he has a severe mental impairment which meets all of the criteria in the agency listings (20 C.F.R. Sec. 404, Subpt. P, App. l, 12.04 (1991)) and thus requires a finding of disability. Morton contends that the ALJ should not have discounted the report of Dr. Badawi, and that, according to the report, his mental impairment meets the criteria in the listing. The Secretary quite properly responds that the ALJ was not obligated to accept the doctor's report because it conflicted with the remainder of the record and is not entitled to much weight under the applicable agency regulation. 20 C.F.R. Sec. 404.1527(d) (1991). In addition, the Secretary contends that without Dr. Badawi's report, Morton cannot meet the criteria for a disabling mental impairment.
 
 
 14
 Dr. Badawi reported that Morton had been suffering from mental problems since 1984. If the ALJ had taken Dr. Badawi's report as controlling, it is possible that appellant could have shown that he met the criteria in the agency listing. However, the ALJ was privileged to give Dr. Badawi's report very little weight under the regulation. While the doctor did examine Morton, he saw him only once and was not a treating physician. His assessment of Morton's condition was supported almost exclusively by Morton's own reports of his mental state.
 
 
 15
 Additionally, the evidence in the record as a whole is not consistent with the doctor's report. Dr. Zarate, with whom Morton had a longtime relationship, never referred Morton to a mental health specialist or reported troublesome symptoms except anxiety. Dr. Zarate did not indicate in any way that he was concerned that the Ativan he had prescribed for the anxiety was not alleviating whatever problem Morton had. Indeed, Dr. Zarate had told Morton to return to work in November of 1987.
 
 
 16
 This Court is satisfied there is substantial evidence to support the ALJ's decision to give very little weight to Dr. Badawi's opinion. With the weight of Dr. Badawi's report appropriately discounted, there is substantial evidence to support a finding of no mental impairment.
 
 
 17
 This Court also concludes that the district court was correct in upholding the finding of the ALJ that Morton remains able to perform past relevant work. The record reflects that upon questioning a vocational expert concerning Morton's former work, the ALJ determined that Morton's past relevant work was at the light exertional level. He therefore concluded that Morton maintained enough residual function or capacity to be able to perform his past relevant work as a supervisor in the textile mill. As a consequence, the ALJ was correct in refusing to qualify Morton as disabled.
 
 
 18
 The burden remained on Morton to prove that he could not return to his past work. See Hall v. Harris, 658 F.2d 260, 264 (4th Cir.1981). Concluding as we have that the findings of the ALJ are supported by substantial evidence, we uphold the ruling of the district court and affirm its decision.
 
 
 19
 AFFIRMED.