**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANNIE L. KOONCE,
Plaintiff-Appellant,

v.

No. 98-1144

KENNETH S. APFEL, COMMISSIONER OF
SOCIAL SECURITY,
Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
William L. Osteen, Sr., District Judge.
(CA-96-300-2)

Submitted: November 30, 1998

Decided: January 11, 1999

Before MURNAGHAN and NIEMEYER, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Tomi W. Bryan, Lisa W. Bullard, BRYAN, BULLARD & HOUG-
LAN, P.C., Greensboro, North Carolina, for Appellant. Frank W.
Hunger, Assistant Attorney General, Walter C. Holton, Jr., United
States Attorney, Mary Ann Sloan, Chief Counsel, Region IV, Haila
Naomi Kleinman, Acting Branch Chief, J. Patrick Powers, Assistant
Regional Counsel, Office of General Counsel, SOCIAL SECURITY
ADMINISTRATION, Atlanta, Georgia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Annie L. Koonce appeals from the district court's order affirming the Commissioner of Social Security's (Commissioner) finding that she is not disabled and therefore not entitled to Disability Insurance Benefits ("DIB"). Finding no error, we affirm.

On February 3, 1994, Koonce filed an application for benefits, alleging that she has been disabled since December 17, 1991, the day she was diagnosed with breast cancer. Koonce has had a left breast lumpectomy with left axilla lymphadenectomy. Koonce's application was denied initially and upon reconsideration. An administrative law judge ("ALJ") conducted a de novo review, including a hearing on August 27, 1992, and a favorable decision was issued on September 24, 1992. On February 10, 1993, the Appeals Council remanded the case back to the same ALJ on its own motion. A second hearing was held on April 29, 1993, resulting in an unfavorable decision on March 18, 1994. Koonce filed a request for review, and the Appeals Council remanded the case to a different ALJ. On August 23, 1994, a third hearing was conducted, but it was suspended to gather more evidence. A fourth hearing before the second ALJ was conducted on January 5, 1995; however, the second ALJ recused herself because she was treated for the same condition as Koonce. Finally, on March 21, 1995, another hearing was conducted by a third ALJ, resulting in an unfavorable decision on November 1, 1995. Koonce was present, testified, and was represented by counsel at every hearing.

Koonce testified at the last hearing that she had a left breast lumpectomy on January 2, 1993. She testified that since the surgery, she suffers from pain and edema of the left arm, requiring her to wear a Jobst pressure stocking to reduce the swelling, and she suffers from stiffness in her left hand. She testified that she takes medication for the pain and swelling in her arm, but she really does not use her arm

2

at all. She testified that she has trouble remembering things and paying attention. She stated that she feels frustrated, suffers from daily crying spells, and experiences feelings of worthlessness. She testified that she saw a mental health professional in 1993, but she stopped going after only two or three sessions. She continues, however, to take medication for depression. Koonce testified that she also suffers from coccydynia, which restricts the amount of time she is able to sit pain-free. She occasionally experiences dizziness and shortness of breath. Lastly, Koonce testified that she suffers from "frozen shoulder" and takes medication for the pain.

The ALJ found that Koonce met the disability insured status requirements of the Act on December 17, 1991, the onset date of her disability, and continued to meet the requirements through September 30, 1995. The ALJ found that Koonce has not engaged in substantial gainful activity since the alleged onset of the disability. The ALJ further found that Koonce suffered from severe impairments consisting of a lumpectomy of the left breast carcinoma and lymphadenectomy (left axilla), followed by radiation therapy and chemotherapy, with no evidence of reoccurrence, a dysthymic disorder since November 1993, and coccydynia. The ALJ determined that these impairments did not, either individually or in combination, meet or equal a listed impairment. The ALJ further found that Koonce had the residual functional capacity to perform the physical exertional and nonexertional requirements of work except work requiring lifting/carrying weights above the light exertional level, overhead reaching with either arm, using the left arm or hand for anything other than assisting the right, dominant upper extremity, or other than unskilled work that did not involve more than a low level of job-related stress. Although Koonce's residual functional capacity would not permit her to perform her past relevant work, the ALJ found that there were a significant number of jobs in the national economy that Koonce could perform. The ALJ concluded that Koonce was not disabled. The Appeals Council declined to review the ALJ's decision, rendering it the final decision of the Commissioner. Koonce then filed a civil action in the district court. The district court granted the Commissioner's motion for summary judgment, and Koonce now appeals.

We must uphold the Commissioner's decision denying disability so long as the decision is supported by substantial evidence and in reach-

3

ing the ultimate conclusions, the correct law was applied. See 42 U.S.C.A. § 405(g) (West Supp. 1998); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence has been defined by the Supreme Court as "`such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is`substantial evidence.'" Hays, 907 F.2d at 1456 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). We will not reweigh the evidence or substitute our judgment for that of the Commissioner. See Hays, 907 F.2d at 1456.

First, Koonce argues that the ALJ erred in not giving controlling weight to Koonce's own treating physicians, Dr. Murinson and Nurse Ballen. Specifically, Koonce contends that: (1) Nurse Ballen noted in August 1992, that Koonce would be disabled indefinitely because her treatments for cancer are physically and emotionally debilitating and that she would be unable to work until the treatments were completed; (2) in September 1993, Dr. Murinson noted that legitimate grounds for full disability exist; and (3) in January 1995, Dr. Murinson stated that Koonce had lymphedema of the left arm and that she continues to be incapacitated by her left upper extremity problems. Further, Koonce asserts that the ALJ failed to accept the opinion of Dr. Cloninger, a consultative examining physician, expressed during the first administrative hearing.

An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," see Scively v. Sullivan, 966 F.2d 1070, 1076-77 (7th Cir. 1992), or has not given good reason for the weight afforded a particular opinion. See 20 C.F.R. § 404.1527(d) (1998). Circuit precedent does not require that a treating physician's testimony "be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). While 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) both provide that a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight if it is well supported by medi-

4

cally acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). A medical expert's opinion as to the ultimate conclusion of disability is not dispositive; opinions as to disability are reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1) (1998). Generally, such opinions are given more weight the more the medical source presents relevant evidence to support it and the better the source explains the opinion. See 20 C.F.R. § 404.1527(d)(3) (1998). In addition, the more consistent the opinion is with the record as a whole, the more weight it will be given. See 20 C.F.R. § 404.1527(d)(4) (1998). Medical findings must also be supported by "medically acceptable clinical and laboratory diagnostic techniques." See 20 C.F.R. § 404.1526(b) (1998).

Dr. Murinson was Koonce's oncologist and internist from 1992 until 1995. His treatment of her consisted of approximately nine visits. During one of the visits, Dr. Murinson stated, inter alia, that "legitimate grounds for disability exists." We find that Koonce's contention that Dr. Murinson's opinion should be given controlling weight to be without merit because Dr. Murinson's statement regarding whether Koonce was disabled is a determination reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1) (1998).

Further, Dr. Murinson's opinion that Koonce has lymphedema and continues to be incapacitated by her left upper extremity problems is also not entitled to controlling weight because the opinion was not supported by any objective medical evidence. Moreover, the record as a whole is inconsistent with Dr. Murinson's opinion that Koonce is incapacitated by her edema. Just months before Dr. Murinson gave this opinion, he observed that Koonce was no longer receiving any physical therapy, for reasons that were unclear to him, and that she seemed indifferent to her problems with her left upper extremity. Moreover, an assessment by Dr. Rowe, a rheumatologist, suggested that Koonce's "frozen shoulder" could improve considerably if not be totally eliminated with medication and physical therapy. As a result, we find that the ALJ did not err in refusing to give controlling weight to Dr. Murinson's opinions. See Craig, 76 F.3d at 589-90.

5

Nurse Ballen attributed Koonce's disability only to the side effects of the chemotherapy and radiation treatments and, as the ALJ found, Koonce's treatments ended in August 1992. Therefore, there was no continuing basis for Nurse Ballen's opinion of disability. Further, under the regulations, a nurse is not considered an"acceptable medical source" for providing opinions on what a claimant can do despite her impairments. See 20 C.F.R. § 404.1513(a) (1998). Although Koonce asserts that Nurse Ballen should be given the status of an "acceptable medical source" because she was part of a treatment team, the record reflects that Nurse Ballen alone made the assessment that Koonce was disabled. In any event, the determination of whether a claimant is disabled is one reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1) (1998).

Koonce's contention that the ALJ erred in failing to accept the opinion of Dr. Cloninger, a consultative examining physician who testified at the first hearing, is without merit. Dr. Cloninger reported that Koonce was "unable to do any substantial work at all on a sustained basis" because of the swelling in her left upper extremity, but he could not say how long that condition would continue in the future. Dr. Cloninger was a consulting physician rather than a treating physician; therefore, under the regulations, his opinion cannot be given controlling weight. See 20 C.F.R. §§ 404.1502; 404.1527(d)(2) (1998). Further, aside from Dr. Cloninger's reluctance to predict the future course of Koonce's impairments, his statement that he thought her impairments would last up to August 1992, fell short of the twelve-month durational requirement for disability under the regulations. See 20 C.F.R. § 404.1505(a) (1998). The ALJ did not err in declining to accord significant weight to Dr. Cloninger's opinion.

Next, Koonce contends that the ALJ erred in finding that her impairments did not meet or equal the criteria for any listed impairment in listing 12.04 in Appendix 1, Subpart P, Regulations Number 4.* The ALJ found that Koonce had an affective disorder since

_____

*Listing 12.04 provides that an affective disorder meets the required severity when: (a) there is medically documented persistence of either depressive syndrome, manic syndrome or bipolar syndrome; and (b) which result in at least two of four behavioral deficiencies. See Appendix 1, Subpart P, Regulations Number 4.

6

November 1993, but that it was not severe enough to meet or equal listing 12.04. The ALJ found that Koonce was not documented as having the required four signs and symptoms under§ 12.04A(1) necessary to establish the ongoing presence of a medically determinable mental impairment from November 1993 through September 1995. The ALJ discounted the opinion of Dr. Morcos, a consultative psychiatric examiner, because it was supported only by Koonce's self-serving allegations during her pursuit of disability benefits. The record reveals that, although Koonce sought help for her symptoms of depression at a mental health center in November 1993, she stopped seeking counseling after a few sessions and never returned for future scheduled treatments. Rather, three days after going to the mental health center, Koonce obtained samples of an antidepressant from Dr. Murinson. She reported to Dr. Murinson in February 1994 that her depression was better and received more antidepressants. However, when she was sent to Dr. Morcos for a consultative psychiatric examination, she described the same depressive symptoms that she had in 1993 when she attended the mental health center. The ALJ, giving Koonce the "benefit of the doubt," noted that it is reasonable to conclude that from "time to time" Koonce's mood might be "lower than at other times" and that this mood might interfere minimally with her ability to tolerate work-related stress. In order to qualify as disabled, however, Section 12.04 mandates that two criteria be met. The ALJ's review of Koonce's reported activities provides substantial evidence for his conclusion that Koonce did not satisfy the listing.

Koonce also contends that the ALJ's determination that she had the residual functional capacity ("RFC") to perform light work with no overhead reaching, using the left arm as an assistive device only, and only light level stress was not supported by substantial evidence. Specifically, she asserts that this determination failed to take into account the problems associated with her dysthymic disorder and her coccydynia. Our review of the ALJ's opinion reveals that both of these factors were taken into account.

The determination of a claimant's RFC and the application of vocational factors are reserved to the ALJ, who is not bound by medical opinion on these subjects. See 20 C.F.R.§ 404.1527(e)(2) (1998). As mentioned previously, Dr. Morcos' opinion regarding Koonce's alleged mental impairments was discounted by the ALJ because it

7

was not supported by any medical testing and was not supported by the record as a whole. Moreover, the ALJ specifically considered Koonce's coccydynia in determining her RFC. The ALJ, however, found that based on the evidence, Koonce obtained "satisfactory relief of pain and discomfort" with the prescribed medication and with the aide of a donut cushion. Accordingly, the ALJ specifically considered both of these impairments but found that Koonce was not affected by the impairments as she alleged.

Additionally, Koonce contends that the hypothetical question posed to the vocational expert was faulty because it did not incorporate Dr. Morcos' findings from his consultative examination of Koonce's sitting limitations caused by the coccydynia. For a vocational expert's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments. See Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). The ALJ, however, has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1986). As previously noted, the ALJ properly found that Dr. Morcos' opinion was not entitled to controlling weight, and therefore, the ALJ did not err in excluding Koonce's alleged mental impairments from the hypothetical. Moreover, the ALJ did include nonexertional limitations in the hypothetical that were supported by the record. Additionally, the ALJ properly excluded evidence of Koonce's coccydynia because the record demonstrated that the pain was "tolerable" and adequately managed with pain medication. We find that the ALJ's hypothetical fairly accounted for Koonce's impairments. See Walker, 889 F.2d at 50.

Koonce also contends that the number of jobs the vocational expert testified existed that she was able to perform was inflated, and therefore, the ALJ erred in relying on the information. As support for her assertion that the vocational expert's testimony was inflated and unsubstantiated, Koonce relies on jobs listed in the Unskilled Employment Quarterly as the only source for the number of jobs available. Koonce's assertion that the vocational expert's testimony lacked credibility presumes that the vocational expert relied on the Unskilled Employment Quarterly. Rather, the regulations specifically provide that the vocational expert is entitled to rely on any one of a

8

number of sources. See 20 C.F.R. § 1566(d) (1998). Further, even assuming the Vocational examiner overestimated the number of jobs available, Koonce concedes that there are still hundreds of jobs available. See Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (noting that as few as 110 jobs constitute a significant number). We find that Koonce's contention is without merit.

Finally, Koonce asserts that the ALJ did not give proper weight to her complaints of pain and did not properly assess her credibility. Once medical evidence is produced supporting the existence of a condition that could reasonably produce pain, the Commissioner must assess the effect of pain on the claimant's residual functional capacity. See Foster v. Heckler, 780 F.2d 1125, 1129-30 (4th Cir. 1986). Evidence of a claimant's activities as affected by the pain is relevant to the severity of the impairment. See Craig, 76 F.3d at 595. An ALJ's assessment of a claimant's credibility regarding the severity of pain is entitled to great weight when it is supported by the record. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984).

The ALJ's report clearly demonstrates that he considered the opinion of Koonce's physicians, her medical history, her treatments and medications, and her own subjective claims regarding her pain in concluding that her pain was not as disabling as Koonce alleged. The ALJ gave numerous reasons for discounting Koonce's testimony and credibility. We therefore find no merit to Koonce's contention that the ALJ did not give proper consideration to her pain and did not properly assess her credibility.

We therefore affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

9