10 F.3d 1080
 43 Soc.Sec.Rep.Ser. 28, Unempl.Ins.Rep. CCH (P) 17575A
Billy ENGLISH, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee,
North Carolina Client Council; Client Council of the Lower
Cape Fear, Amici-Curiae.
 No. 93-1125.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 7, 1993.
Decided Dec. 1, 1993.
 
 Kathleen Shannon Glancy, Glancy & Armstrong, Wilmington, NC, argued, for plaintiff-appellant.
 Barbara Dickerson Kocher, Sp. Asst. U.S. Atty., Raleigh, NC, argued (James R. Dedrick, U.S. Atty., on brief), for defendant-appellee.
 Gregory C. Malhoit, North Carolina Legal Services Resource Center, Raleigh, NC, Marcus W. Williams, James J. Wall, Legal Services of the Lower Cape Fear, Wilmington, NC, for amici curiae.
 Before RUSSELL, Circuit Judge, SPROUSE, Senior Circuit Judge, and GARBIS, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 SPROUSE, Senior Circuit Judge:
 
 
 1
 This is an appeal from a judgment of the United States District Court for the Eastern District of North Carolina affirming the decision of the Secretary of Health and Human Services denying social security disability benefits to the appellant, Billy English, under the Social Security Disability Benefits Reform Act, 42 U.S.C. Sec. 423. English argues that there was not substantial evidence to support the finding of the administrative law judge (ALJ) that he was not disabled under the applicable regulations. He also challenges the testimony of a vocational expert at his hearing, arguing that the ALJ propounded an incorrect hypothetical question to the vocational expert and that the vocational expert's testimony was grounded on an outdated edition of the Dictionary of Occupational Titles. We affirm the district court's judgment insofar as it found substantial evidence to support the ALJ's assessment of English's residual functional capacity but, agreeing with English's contentions concerning the vocational expert's testimony, we reverse and remand for a new determination by the ALJ of English's ability to perform jobs in the national economy based on a correct hypothetical question and consideration of the Fourth Edition of the Dictionary of Occupational Titles.
 
 
 2
 English filed his first of several applications for disability benefits in 1979 and after administrative denials and remand for further evaluation under the ruling of Hyatt v. Sullivan, 899 F.2d 329 (4th Cir.1990), the ALJ conducted a hearing on his final application. The ALJ correctly found that English's period of eligibility began in 1978 and expired in 1983. During that period, he suffered from emphysema, diabetes, back trouble, arthritis, dizziness, hypertension, blurry vision, and borderline intellectual functioning. The ALJ found that despite these conditions, English had the residual functional capacity to perform a limited range of light work, as defined in 20 C.F.R. Part 404, Subpart P, Appendix 2, Sec. 202 (1993). After considering the testimony of a vocational expert, the ALJ ruled that there were a significant number of jobs in the national economy that English could perform. He was therefore ineligible for disability insurance benefits. On appeal, English contends there was not substantial evidence to support the finding that he could perform a limited range of light work. He argues that the evidence demonstrated that he was only capable of performing sedentary work under 20 C.F.R. Part 404, Subpart P, Appendix 2, Sec. 201. English also contends that the ALJ erred by considering a vocational expert's testimony which was based on an outdated edition of the Dictionary of Occupational Titles.
 
 
 3
 English, of course, bears the burden of proving that he is disabled within the meaning of the Social Security Act, 42 U.S.C. Sec. 423(d)(5); Hall v. Harris, 658 F.2d 260, 264 (4th Cir.1981). A disability, as defined by the Act, is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. Sec. 423(d)(1)(A). A claimant must demonstrate that
 
 
 4
 his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
 
 
 5
 42 U.S.C. Sec. 423(d)(2)(A).
 
 
 6
 In considering evidence of English's disability, the ALJ correctly undertook the sequential analysis required by Hall[1]; see also Smith v. Heckler, 782 F.2d 1176, 1180 (4th Cir.1986); McLain v. Schweiker, 715 F.2d 866 (4th Cir.1986). The ALJ determined that English was not able to return to his past relevant work as a welding instructor and a cloth grader. He recognized that once English had demonstrated an inability to return to any of his prior occupations, the burden then shifted to the Secretary to establish that other jobs existed in significant numbers in the national economy that English could perform given his functional limitations, age, education, work experience, and physical and mental limitations, including pain. Coffman v. Bowen, 829 F.2d 514, 518 (4th Cir.1987); Millner v. Schweiker, 725 F.2d 243, 246 (4th Cir.1984). The ALJ found that English, during the period in issue, was capable of performing the following activities: lifting up to 20 pounds on an occasional basis, frequently lifting or carrying objects weighing up to ten pounds, walking and standing for up to 20 minutes at one time, and sitting for prolonged periods. He also determined, however, that English's ability to perform light work was limited by nonexertional factors. Specifically, he could not be exposed to dust, fumes, or other respiratory irritants and was generally unable to remember and carry out complex job instructions. English also could not follow work rules, relate to co-workers, deal with the public, interact with supervisors, cope with work stresses, or maintain his concentration.
 
 
 7
 Absent other factors, the combination of English's reduced exertional capacity and limited vocational skills would not have resulted in a finding of disability under the grids pertaining to light work, 20 C.F.R. Part 404, Subpart P, Appendix 2, Sec. 202. Due to his nonexertional limitations, however, English's ability to perform certain jobs could not be properly assessed under the generalized rubric of the grids. Accordingly, the ALJ relied on the testimony of a vocational expert to supplement the grids. In giving his testimony, the vocational expert considered the ALJ's findings as to the type of work--in terms of stamina, strength, and intelligence--that English was able to perform during his eligibility period. We therefore first consider English's contention that there was not substantial evidence to support the ALJ's finding that he had the functional capacity to perform light work.[2]
 
 
 8
 Dr. Edward L. Boyette treated or saw English sporadically from 1978 through 1991. In connection with English's first application, Boyette reported on May 15, 1979, that English was diabetic and suffered from hypertension, arthritis, and pulmonary emphysema. English was on medication for these ailments, but Boyette doubted that he took them as directed. Boyette found no range of motion problems, only subjective complaints of back pain. He concluded, however, that English "is physically unfunctional for work." A month later, Boyette described English as a fat, diabetic, hypertensive patient whose response to treatment could not be accurately detailed because it was questionable whether English took his medication. He went on to note: "I have seen people with worse diabetes, hypertension, and arthritis who have worked hard. There seems little motivation here and, in my opinion, looking at his overall situation, he cannot earn a living."
 
 
 9
 In connection with English's second application for disability insurance, on February 5, 1982, Dr. Boyette said that he had made no diagnosis of angina in English and that an EKG performed in 1979 was normal. The patient's major problems were described as hypertension and diabetes, but Boyette noted that English did not take his insulin or high blood pressure medicine on a regular basis. In a medical report dated February 13, 1982, Boyette diagnosed English as suffering from diabetes, hypertension, obesity, and arthritis. He went on to write that "due to his disease and lack of motivation, [English] probably is permanently unable to earn a living and for all practical purposes [is] disabled."
 
 
 10
 In connection with English's third application for disability, Dr. Boyette noted on December 10, 1982, that there had been little change in English since his last report, and he raised the question of whether English might be mentally retarded. Finally, in a statement dated April 17, 1989, Dr. Boyette reported that English first came to him complaining of back pain and breathing problems and that these ailments had persisted. He said that pulmonary function tests indicated a marked reduction in breathing capacity. Acknowledging that there had been questions about English's effort on pulmonary tests, Boyette wrote that English probably tried to cooperate but was likely hampered by his intellectual deficiencies. Boyette stated that English had complained of chest pains and that an EKG performed in 1979 showed early signs of left ventricular hypertrophy. He added that x-rays had shown some lung blockage. With respect to English's complaints of back pain, Boyette noted that x-rays had shown disc-space narrowing and hypertrophic spurring in the L5-S1 region of the spine. He opined that the arthritis likely caused persistent pain and limitation of motion. "He should not lift more than 10 pounds and sitting, standing, or walking for long periods of time is contraindicated. The chronic obstructive lung disease would reasonably be expected to cause him shortness of breath and fatigue." Boyette concluded the 1989 statement by saying: "All these conditions have significantly impaired him and ... they have been complicated by his limited intellectual capabilities. I consider him disabled for any form of work he is physically and mentally capable of performing. Since I have known him he has not been trainable for any position his body will allow him to perform."
 
 
 11
 The record includes medical reports from other physicians. English was admitted to the Veterans Administration Medical Center in Fayetteville, North Carolina, on November 14, 1978, due to trouble with breathing and back pain. The treating physician, Dr. Eugene M. Holden, found that while English was obese, there were no symptoms of heart disease, and leg raising tests were essentially normal. A chest x-ray showed the heart and lungs to be essentially normal, but a spine x-ray indicated hypertrophic spurring in the lower lumbar region. Pulmonary function tests revealed a breathing capacity of 44% of normal. Dr. Holden noted that English had socio-economic problems because he felt unable to work due to back pain, but Holden put no limitations on English's ability to work.
 
 
 12
 In connection with English's first application for disability insurance, Dr. Corazon Ngo completed a medical examination on July 17, 1979. Ngo reported that English's heart beat was regular and that his lungs were clear. X-rays revealed a slight narrowing of the disc space in the L5-S1 region of the spine. Pulmonary tests revealed breathing capacity of 36% of normal. Ngo diagnosed English as suffering from diabetes mellitus, hypertension, and obesity. Dr. Ngo completed another medical examination of English on March 10, 1982, in connection with appellant's second application. X-rays showed the lungs to be clear and a narrowing of the disk space between L5-S1. There was tenderness over the lumbar spine but range of motion was normal. Pulmonary tests showed breathing capacity of 45% of normal. Dr. Ngo diagnosed English as suffering from hypertension, obesity, diabetes mellitus, and chest pain of questionable etiology.
 
 
 13
 In connection with English's third application for disability insurance, Dr. Byong Yue examined him on November 2, 1982. He diagnosed him as suffering from diabetes mellitus, hypertension, and possibly rheumatoid arthritis. An x-ray performed at a hospital in Wilmington, North Carolina, on November 9, 1982, revealed intervertebral disc space narrowing at the L5-S1 level with degenerative arthritis noted. X-rays also revealed a mild obstructive lung defect.
 
 
 14
 The ALJ balanced Dr. Boyette's conclusion that English was unable to work during the application period with Boyette's qualifying remarks and the evidence that English did not take the medicines prescribed for him. The ALJ found significant Boyette's opinion that English was poorly motivated and reasoned that other statements by Dr. Boyette were inconsistent with his conclusion that English could not perform any work. Finally, the ALJ relied heavily on English's testimonial statements that during the applicable period, he could lift 25-30 pounds, engage in normal social contacts, drive a car, and could actively participate in hunting and fishing. With respect to English's basic intelligence, the ALJ considered English's testimony that he served in the Army between 1957 and 1959 as a squad leader in the infantry and that during the six years prior to the commencement of his alleged disability, he used a textbook in his work as a welding instructor.
 
 
 15
 We, of course, are not engaged in a de novo review of the evidence but examine it to determine whether there is substantial evidence to support the ALJ's finding that English was capable of performing limited light work. We have defined substantial evidence as " 'evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla but may be somewhat less than a preponderance.' " Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966)). Examined under this standard, we think the reports of Drs. Holden, Ngo, and Yue, and the evidence that English was uncooperative during pulmonary function testing, failed to take prescribed medication, and was poorly motivated, together with his own testimony relating to his exertional capacity, amounted to substantial evidence to support the ALJ's finding.
 
 
 16
 Turning to English's argument that the ALJ relied on improper vocational expert testimony, however, we conclude that the ALJ's acceptance of expert testimony based on an outdated edition of the Dictionary of Occupational Titles ("DOT ") requires a remand. Dr. Thomas Baldwin was called as a vocational expert. Based on the ALJ's hypothetical question, which included descriptions of English's residual functional capacity, Baldwin testified that the DOT listed five jobs that could be performed by applicants having English's skills and an exertional capacity to do light work: Cashier II, Ticket Seller, Small Products Assembler, Assembler of Electrical Accessories, and Small Parts Assembler. It seems clear, however, that Baldwin based his testimony on the Third Edition of the DOT. For example, he described the Cashier II and Ticket Seller positions as sedentary work while in the Fourth Edition, they are categorized as light work. DOT, 211.462-010, 211.467-030. The Third Edition of the DOT was published in 1965, some fifteen years before English's eligibility period, and as was said by our sister circuit in Townley v. Heckler, 748 F.2d 109 (2d Cir.1984): "[t]he differences between the Third and Fourth Editions are substantial. The Fourth Edition requires a much higher level of mathematical and verbal skills for most of the jobs at issue than did the Third Edition." Id. at 113 (citation omitted). The Townley court went on to hold that an expert's use of the outdated version was a failure to apply the Social Security regulations as mandated. Id. at 114.
 
 
 17
 In determining whether jobs exist in the national economy, regulations promulgated by the Secretary state that "we will take administrative notice of reliable job information available from various governmental and other publications. For example, we will take notice of [the] Dictionary of Occupational Titles...." 20 C.F.R. Sec. 404.1566(d)(1). Information contained in the DOT is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption. DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir.1983). When the Secretary purports to rely on information contained in the DOT to establish the existence or absence of jobs that can be performed by a claimant, it stands to reason that the current edition of the DOT should be used.[3] Testimony based on an outdated edition, therefore, should not be recognized as substantial evidence to support a determination as to the existence of jobs in the national economy. While it may turn out to be true that the Secretary can identify jobs found in the Fourth Edition of the DOT that English could have performed at the end of his disability period, this determination should have been made by the ALJ in the first instance from testimony relying on the current Dictionary of Occupational Titles or equivalent source of information providing data on jobs in the national economy at the time of the disability determination.
 
 
 18
 In questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record on the claimant's impairment. Walker v. Bowen, 876 F.2d 1097, 1100 (4th Cir.1989). English argues that the hypothetical posed to Dr. Boyette was inadequate in that it did not incorporate all pertinent information as to English's disabilities. English claims that the hypothetical did not take into account his inability to tolerate fumes and his need to take breaks from sitting or standing. In addition, English contends the ALJ attributed certain functional capacities to him that were unsupported by evidence in the record. English claims that there was no evidence in the record that he could lift twenty pounds, as was assumed in the hypothetical question. The claimant also complains that the expert classified him as a high school graduate, in spite of evidence that he had an IQ of 76 and did most of his math on his fingers.
 
 
 19
 We think, however, there is merit to the Secretary's response that the question presented could be viewed as presenting those aspects of the testimony. The hypothetical included the presumption that the claimant "is unable to tolerate dust or fumes" and that he was "unable to walk ... more than two blocks, stand say more than twenty minutes." The Secretary concedes that the ALJ loosely characterized English as a high school graduate without explaining that English earned a General Equivalency Degree through a technical school. While we cannot say that the ALJ's hypothetical was wholly inadequate, on remand, information as to English's abilities should be more accurately presented to the expert witness.
 
 
 20
 In view of the above, the judgment of the district court is affirmed insofar as it found substantial evidence to support the Secretary's finding of a functional capacity to perform a limited range of light work but is reversed and remanded for proper consideration of the availability of jobs in the national economy which English could perform under the Fourth Edition of the Dictionary of Occupational Titles.
 
 
 21
 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 
 
 
 [1]
 Under this process, the ALJ must determine:
 (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job. Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir.1981).
 
 
 [2]
 English argues that the ALJ should have found that he only had the capacity to perform sedentary work and correctly argues that if a grid relating to sedentary work had been applied, he would have been found disabled. 20 C.F.R. Part 404
 
 
 [3]
 In this case, the vocational expert should have used the DOT in effect on December 31, 1983, the last date English was insured. The Fourth Edition of the DOT was issued in 1977