Jerry L. **WOODY**, Plaintiff,

v.

Jo Anne **BARNHART**, Commissioner of Social Security, Defendant.

No. CIV.A. 3:03CV00045.

United States District Court, W.D. Virginia, Charlottesville Division.

July 6, 2004.

---

Patrick Heith Reynolds, Wolfe, Williams & Rutherford, Norton, VA, for Plaintiff.

Sara Bugbee Winn, United States Attorneys Office, Roanoke, VA, for Defendant.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

This case comes before the court on the Commissioner of Social Security's objections to the March 29, 2004 Report and Recommendation of the presiding United States Magistrate Judge. The plaintiff filed his complaint May 15, 2003, seeking judicial review of and relief from the Commissioner's denial of disability benefits; each side subsequently filed motions for summary judgment. The Magistrate Judge recommended that the court reverse the final decision of the Commissioner to deny the plaintiff benefits but remand to the Commissioner for further proceedings at the fifth and final step of the disability evaluation process. For the reasons set forth below, the Commissioner's objections shall be SUSTAINED IN PART, the Magistrate Judge's Report and Recommendation shall be ADOPTED IN PART, and the Commissioner's decision shall be REVERSED and REMANDED to the Commissioner for further proceedings at both the fourth and fifth steps of the disability evaluation process, in accordance with this opinion.

This court finds a lack of "substantial evidence" in the record to support the Administrative Law Judge's determination that the plaintiff was capable of returning to his prior work as a dispatcher in the moving business. The court also finds that the Administrative Law Judge should have obtained the testimony of a vocational expert about the availability of jobs for a claimant suffering from nonexertional pain and obesity, or alternatively made a specific finding that the claimant's pain and obesity did not amount to nonexertional impairments. These matters should be the subject of proceedings on remand.

## I.

On November 15, 2000, the plaintiff, Jerry Woody, then 42 years old, applied to the Social Security Administration for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–83f. He maintained that he became disabled and unable to work by October 1, 1996, because of pain in nerves, muscles and joints that he incurred during fourteen years of work as a mover. (R. at 84.) At the time of the application the plaintiff stood 5 feet 10 inches tall and weighed 300 pounds. (R. at 83.) The application was denied initially and upon reconsideration.[1] The plaintiff requested an administrative hearing, which was held August 19, 2002. A vocational expert appeared at the hearing but was not asked to testify. (R. at 45.)

The Administrative Law Judge's decision of September 19, 2002 (R. at 16–23) concluded that the plaintiff did not suffer from a disability, as defined in the Social Security Act. *See* 42 U.S.C.A. § 423(d)(1)(A) (West 1994 & Supp.2002). Under the Social Security Administration's five-step process to determine whether a claimant is "disabled," the Administrative Law Judge ("ALJ") considers, in sequence, whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, making him disabled as a matter of law, (4) can return to his past work, and if not, (5) retains the

---

1. A separate application for benefits by the plaintiff in 1999 also had been denied, initially and upon reconsideration, and the plaintiff's request for a hearing on that application was denied as untimely on October 19, 2000. (R. at 16.)

capacity to perform specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520 (2004). The claimant bears the burden of production and proof during the first four steps of the inquiry. *See Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir.1992) (*per curiam*). At the fifth step, the burden shifts to the Commissioner to prove that other jobs exist in the national economy that the claimant can perform *Id.*

In concluding that the claimant was not disabled, the ALJ first decided the case at step four.[2] After reviewing the medical evidence in the record, he found that the claimant "has always had the residual functional capacity [RFC] for light work that does not require more than occasional climbing, balancing, stooping, kneeling, crouching or crawling." (R. at 22.) He then found the plaintiff able to return to his prior employment as a dispatcher. (R. at 23.) The plaintiff had at one time worked for six months as a moving company dispatcher, supervising 50 employees, according to brief notations on his disability benefits application and accompanying fifteen-year work history report. (R. at 84–85, 93–94.) These forms are the sole part of the record referring to plaintiff's work as a dispatcher; the ALJ did not ask any questions about this work at the hearing. (R. at 40–45.)

The ALJ also made an alternative determination of "not disabled" at step five. "*Based on an exertional capacity* for light work" (R. at 23) (emphasis added), in conjunction with the claimant's age, education, and work experience, the ALJ applied the Commissioner's medical-vocational rules known as "the grids" to find that jobs were available in the national economy for some-

one with the claimant's range of conditions. 20 C.F.R. Pt. 404, Subpt. P, App. 2. These findings were based on medical evidence in the record about the severity of the claimant's impairments, and the ALJ's doubt of the plaintiff's allegations of complete inability to work. (R. at 22.) An evaluation by a Disability Determination Service (DDS) physician on May 15, 2001 found "a light RFC is indicated." (R. at 220.) A separate evaluation by a DDS doctor on May 31, 2001, said the objective medical findings pointed to a durational to light RFC. (R. at 228.) Both evaluators found the claimant's symptoms of pain to be credible. (R. at 220, 228.) The extensive medical records from the plaintiff's own treatment at University of Virginia Medical Center and Region Ten contain numerous assessments and recommendations, but do not make conclusions about the claimant's ability to work. (R. at 122–203, 234–48, 260–293.)

The ALJ's decision became the Commissioner's final decision after the Social Security Administration's Appeals Council denied the plaintiff's subsequent appeal. *See* 20 C.F.R. § 404.981 (2004). The plaintiff then exercised his right to judicial review of the administrative determination with an appeal to this court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The matter was referred to the Magistrate Judge to set forth findings, conclusions, and recommendations for disposition. *See* 28 U.S.C.A. § 636(b)(1)(B) (West 1993 & Supp.2004).

The Magistrate Judge issued his Report and Recommendation on March 29, 2004. It concluded that the Commissioner's decision at step four was not supported by substantial evidence, reasoning that the

---

**2.** The ALJ's findings at steps one to three— that the plaintiff was not working, that he suffered from obesity and a musculoskeletal disorder constituting a "severe impairment," but that the condition was not on the list of impairments automatically deemed a disability—are not contested by either party.

work history form was the only item in the record about dispatching and noting that the bulk of the plaintiff's past relevant work in the moving business was as a driver, warehouseman, or packer. (Report and Recommendation at 3–4.) The Report and Recommendation foreclosed further inquiry on step four, in effect finding for the plaintiff at that stage. At step five the Magistrate Judge found "clear error" in the ALJ's reliance on the "grids," rather than testimony from a vocational expert, given that "the record is replete with evidence that plaintiff suffers nonexertional limitations resulting from a diagnosed C7–8 radiculopathy and obesity." *Id.* at 4.[3] The Magistrate Judge recommended reversal of the Commissioner's final decision with remand of the case to the Commissioner for supplemental evidentiary proceedings at the final (step five) level of evaluation. *Id.* at 5.

The Commissioner raises four objections to the Magistrate Judge's Report and Recommendation pursuant to Federal Rule of Civil Procedure 72(b).[4] First, the Commissioner argues that the burden of proof to establish a disability lies with a claimant through step four. The second objection, concerning step four, is that work as a dispatcher need not be "the bulk" of the plaintiff's past relevant work. (Defendant's Objections at 4.) The third is that the alternative step five finding of no disability is appropriate given that the plaintiff's obesity and musculoskeletal disorder were of "limited functional significance." (*Id.* at 8.) Finally, the Commissioner argues that a step four determination should not be foreclosed on any remand. (*Id.* at 7.)

## II.

The district court reviews *de novo* those portions of the Magistrate Judge's report or specified proposed findings or recommendations to which objection was made. *See* 28 U.S.C.A. § 636(b)(1) (West 1993 & Supp.2004). The court must determine whether the Commissioner's findings are supported by substantial evidence, and whether the correct legal standards were applied. *See* 42 U.S.C.A. § 405(g) (West 2003 Supp.2004); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990). The court gives great deference to the ALJ's factual determinations and reviews them only for clear error. *See Estep v. Richardson,* 459 F.2d 1015, 1017 (4th Cir.1972). Nonetheless, the court is not constrained by deference to the administrative decision in determining whether the correct legal standards were applied—a *de novo* determination of legal issues is obligatory. *See Hines v. Bowen,* 872 F.2d 56, 58 (4th Cir.1989); *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir.1980). Determining whether the evidence presented by the ALJ to support his decision amounts to substantial evidence is a question of law and therefore will be considered anew. *See Hicks v. Heckler,* 756 F.2d 1022, 1024–25 (4th Cir.1985).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401, 91 S.Ct. 1420 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). It "consists of more than a mere scintilla of evi-

---

3. Radiculopathy is a disease of the nerve roots.

4. The Commissioner's objections were received on April 15, 2004, prompting this court to vacate an order signed earlier that day that, in the absence of any objections, had endorsed the Magistrate Judge's recommendations.

dence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990) (quoting *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966)).

■ In reviewing a final decision of the Commissioner, a district court has the authority to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner ... with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West Supp.2000) ("sentence four").

### III.

#### A. *The step four inquiry: past relevant work as a dispatcher*

■ The Social Security Administration's regulations define past relevant work as substantial gainful activity performed within the last fifteen years that lasted long enough for an individual to learn to do it. 20 C.F.R. § 404.1565 (2004). This court accepts the ALJ's finding that the six months the plaintiff spent as a dispatcher, as indicated on his 1980–1994 work history form, met these basic requirements. (R. at 93–94.) Neither regulations, Social Security Administration guidelines, nor case law require that the relevant work be "the bulk" of a claimant's past experience; the Commissioner's objections to this element of the Magistrate Judge's Report and Recommendation are therefore sustained. *See* 20 C.F.R. § 404.1565 (2004); Social Security Ruling ("SSR") 82–62. *See also Pass v. Chater,* 65 F.3d 1200 (4th Cir.1995) (leaving intact the Commissioner's determination that five months employment as a gate guard qualified as past relevant work for a claimant who had spent ten years as a seasonal

tobacco company worker and sharecropper).

Meeting the definitional threshold, however, is the beginning of the examination, not the end. The ALJ's resulting conclusion of "not disabled" rests on the claimant's brief notation on two forms—a few scribbled words and checked boxes on four pages of a 290–page record—that he had worked for six months as a dispatcher. There is no other evidence in the record about the nature of the dispatcher work or the claimant's current ability to perform it. Most importantly, the plaintiff was not questioned about the dispatcher job at his administrative hearing, and therefore was not provided an opportunity to counter (if he chose) the notion that he could still perform the job—a contention that the plaintiff apparently heard for the first time in the ALJ's opinion. The ALJ had ample opportunity at the hearing to question the claimant about his work as a dispatcher or to request further evidence about the specific nature of the job—for instance, how long the claimant was required to sit/stand, whether he had to lift any amount of weight, whether he was diverted from desk duty to moving assignments if staffing was short, etc. As the plaintiff notes, "Had the ALJ [sought] answers to such questions a different decision could have been rendered." (Motion for Summary Judgment and Memorandum of Law on Behalf of the Plaintiff at 7.) But of the thirty-two questions the ALJ asked of the claimant at the hearing, not one was about this past relevant dispatch work that ultimately proved dispositive in the step four inquiry. (R. at 40–45.) This court holds that such minimal documentation and exploration of the pivotal factor in the Commissioner's decision amounts to a "mere scintilla" that fails to meet the "substantial evidence" standard. *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966). *Accord Richardson,* 402 U.S. at 401, 91 S.Ct. 1420.

Although the evidence that the claimant once had been a dispatcher is consistent with an ability to perform past relevant work, it is not, without more, sufficient to show such ability.

Furthermore, the ALJ's findings fail to meet the Commissioner's own thorough standards of inquiry fleshed out in the Social Security Administration's policy rulings, which "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1) (2004). *Accord Heckler v. Edwards,* 465 U.S. 870, 873, n. 3, 104 S.Ct. 1532, 79 L.Ed.2d 878 (1984). Since a determination that a claimant can perform past work has "far-reaching implications"—i.e. eligibility or lack thereof for disability benefits—any such finding "must be developed and explained fully." SSR 82–62.[5] In practice, the ruling says, this means that:

> [E]very effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.
>
> Sufficient documentation will be obtained to support the decision . . . .
>
> Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from

the claimant, employer, or other informed source.

*Id.*

By these measures, the ALJ's determination fell short: no effort was made to secure evidence beyond the disability application/work history forms, no further documentation was obtained, and no detailed information about or description of the requirements of a dispatch job appears in the record. The ALJ instead appeared to rely after the fact on a common understanding of the nature of dispatching duties, writing in his opinion: "The Administrative Law Judge finds that as it is *generally performed* this [dispatcher] job does not require activities that exceed the claimant's residual functional capacity," and therefore that "the claimant retains and always has retained the capacity to return to his prior work as a dispatcher." (R. at 21.) (Emphasis added.) But again, this manner of determination falls afoul of the Social Security Administration's settled policy, which prescribes three possible tests for determining whether a claimant can still perform his past relevant work, based on: (1) "a broad generic, occupational classification of that job," (2) "a particular past relevant job as he or she actually performed it," or (3) "the functional and job duties as generally required by employers throughout the economy." SSR 82–61. The ALJ's reference to the dispatcher job as "generally performed" and the absence of any evidence about the general or specific nature of work as a dispatcher indicates that the ALJ adopted the first test, using a "generic" classification of the job.[6] As the policy ruling pro-

---

**5.** The formal title of this Social Security Ruling is: *Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in General.*

**6.** Alternatively, the ALJ might have relied on job descriptions from the Dictionary of Occu-

pational Titles. This is permissible, according to SSR 82–61, but if so, this approach and the functional demands required should have been cited, and the claimant's ability to meet them confirmed.

ceeds to say, however, reliance on this test in making an affirmative finding of capacity to do past relevant work "is likely to be fallacious and unsupportable," given the varying characteristics and requirements of actual jobs within the classification. *Id.* Accordingly, SSR 82–61's policy statement is that under 20 C.F.R. § 404.1520(e) and § 416.920(e), a claimant will be deemed "not disabled" only when one of the two latter tests is used. *Id.*

The Social Security Administration's guidelines conclude that a decision on an individual's capacity to perform past relevant work "must contain" three specific findings of fact: (1) as to the individual's residual functional capacity, (2) as to the physical and mental demands of the past job/occupation, and (3) that the individual's RFC would permit a return to his or her past job or occupation. SSR 82–62. In the instant case, the first finding is satisfied, but the second is absent entirely and the third is conclusory without evidentiary support. Thus, there is not enough evidence in the record either to support or to refute the ALJ's determination that the plaintiff could return to work as a dispatcher.

The court adopts the conclusion of the Magistrate Judge that there was "insufficient evidence" in the existing record about the nature of the claimant's work as a dispatcher, but the court does not agree that the step four inquiry should therefore be decided in favor of the plaintiff, because the plaintiff still must meet his burden of making a *prima facie* case of disability. Specifically, an inquiry into the nature of the dispatcher job and the claimant's current ability to perform it should be made upon remand, in a manner consistent with SSR 82–62 and 82–61. The court overrules the Commissioner's objection that the step four finding was supported by "substantial evidence." (Report and Rec-

ommendation of the Magistrate Judge at 4, Defendant's Objections at 5.) However, the court sustains the Commissioner's alternative objection that any remand should include the step four inquiry, not solely step five.

### B. Step five inquiry: nonexertional limitations and vocational evidence

■ The Commissioner asks also to affirm the ALJ's decision at step five that the plaintiff was not disabled. The question here is whether the ALJ was justified in relying on "the grids" to meet his burden of proof in showing that the claimant could perform other jobs available in significant numbers in the national economy, taking into account his functional limitations, age, education, and work experience. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir.1981). The regulations specify that if impairments and symptoms such as pain affect a claimant's ability to meet both the strength and non-strength demands—i.e., exertional and nonexertional limitations— of a job, the grids will not be applied directly. 20 C.F.R. § 404.1569a(c)-(d). In such cases, the grids serve only as a framework for decision-making. *Id. See Grant v. Schweiker,* 699 F.2d 189, 192 (4th Cir.1983) ("the regulations provide that the grids may not be conclusively applied where nonexertional impairments exist in tandem with exertional limitations"); *Walker v. Bowen,* 889 F.2d 47 (4th Cir. 1989) (finding that grid tables are conclusive only in cases where pain occurs only upon exertion and limits one's strength functioning); *Coffman v. Bowen,* 829 F.2d 514, 518 (4th Cir.1987) (finding that mechanical application of the grids was error when plaintiff suffered from non-exertional impairments).

■ Without exclusive reliance on the grids, the ALJ must call upon a vocational expert to meet his burden at the fifth step.

Where a claimant "demonstrates the presence of nonexertional impairments, the Secretary, in order to prevail, must be required to prove by expert vocational testimony that, despite [the claimant's] combination of nonexertional and exertional impairments, specific jobs exist in the national economy which he can perform." *Grant*, 699 F.2d at 192. *See also English v. Shalala*, 10 F.3d 1080, 1083 (4th Cir. 1993).

■ An individual's functional limitations are classified as exertional if they pertain to the strength demands of a job—sitting, standing, walking, lifting, carrying, pushing and pulling. Otherwise, they are nonexertional. 20 C.F.R. 404.1569a(a). A nonexertional limitation is "a limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not ... Such limitations are present at all times in a claimant's life, whether during exertion or rest." *Gory v. Schweiker*, 712 F.2d 929, 930 (4th Cir.1983) Typically they are conditions such as mental disorders, environmental intolerances, substance addictions, or sensory impediments, but nonexertional also embraces non-strength-related pain. *See* 20 C.F.R. § 1569a, SSR 96–8p. *See also Walker v. Bowen*, 889 F.2d at 48–49 (holding that a diabetic's constant numbness in extremities as well as rashes, stomach and leg pain, daily vomiting, and other afflictions amounted to substantial evidence of nonexertional pain, precluding reliance on the grids). Pain can be either exertional or nonexertional, depending on the functional limitations or restrictions it induces. SSR 96–8P. In and of itself, pain is not tantamount to disability. 42 U.S.C.A. § 423(d)(5)(A) (West 1991 Supp. 2002.) Nevertheless, pain and all nonexertional conditions pertinent to a disability decision must be evaluated properly as symptoms. "The RFC [residual functional capacity] assessment must address both the remaining exertional and nonexertional capacities of the individual." SSR 96–8P. Finally, although the Fourth Circuit has not ruled on the question, obesity may constitute a nonexertional condition. *See Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir.1997) ("Obesity is ... a nonexertional impairment which might significantly restrict a claimant's ability to perform the full range of sedentary work.") *See also* SSR 96–4p ("it is the nature of the functional limitations or restrictions caused by an impairment-related symptom that determines whether the impact of the symptom is exertional, nonexertional, or both").

Given that so much depends upon whether a claimant's impairments are exertional or nonexertional, the ALJ's ruling—and indeed the plaintiff's and the defendant's filings in this court—are striking for the absence of any specific findings, or any mentions at all, of "nonexertional" impairments. On the contrary, the ALJ's ultimate determination of "not disabled" in the instant case is predicated specifically on "an exertional capacity for light work" (R. at 23.) [7] This wording suggests that nonexertional factors as such may not have been duly considered. The lack of any

---

**7.** The boilerplate description of the step five process in the ALJ's decision also fails to mention any potential role for vocational experts, stating only that "the claimant's residual functional capacity, age, education, and vocationally relevant past work experience, if any, are considered under the Medical–Vocational Guidelines of Appendix 2 of Subpart P of the Regulations"—in other words, the grids, independent of vocational testimony. (R. at 21.) Furthermore, the separate DDS physicians' assessments pronouncing a "light" and "durational to light" residual functional capacity and assessing the severity of the claimant's pain are made under the form heading "Exertional limitations." (R. at 219, 227.)

specific findings as to the plaintiff's nonexertional limitations suggests the ALJ may have erroneously relied exclusively on the grids, which are intended to direct disability determinations for claimants who suffer solely from exertional impairments, rather than on testimony from a vocational expert (who was present but not called upon at the administrative hearing). The medical evidence, however, suggests that the claimant suffered from "chronic" and "constant" pain, particularly in the shoulders and neck, unrelated to exertion. (R. at 138, 187, 190, 198, 220, 228.) Various doctors found these symptoms to be credible. *Id.* at 219, 228. Pain endured even after successful surgery to alleviate its effects. (R. at 228.)[8] The claimant's obesity is acknowledged as a severe impairment, but again, the ALJ does not specify whether this is an exertional condition, a nonexertional condition, or both. Remand will give both parties, the ALJ, and, if necessary, a vocational expert the opportunity to resolve squarely whether the claimant's pain and obesity were nonexertional and if so, what jobs in the national economy these conditions prevented him from performing.

Specifically, this court endorses the Magistrate Judge's recommendation that "further proceedings at the final sequential level would allow both sides to supplement the record so that a clearer record of [the] plaintiff's residual functional abilities could be considered" by a vocational expert. (Report and Recommendation at 4–5.) *See Hall v. Harris,* 658 F.2d at 266 (remanding where there was no evidence in the record and the ALJ made no findings as to whether the claimant had nonexertional limitations affecting capacity to work at the residual functional capacity level determined by the ALJ). *See also Seavey v. Barnhart,* 276 F.3d 1, 11 (1st Cir.2001) (remanding for further proceedings where ALJ failed to make any findings on key issue of whether claimant had a significant nonexertional impairment); *Torres v. Barnhart,* 235 F.Supp.2d 33, 44 (D.Mass. 2002) (finding error necessitating remand where an ALJ rejected plaintiff's subjective complaints of disabling pain as not credible and failed to question a vocational expert about the effect of the plaintiff's pain on her ability to perform work).

There is one avenue by which the ALJ might have reached a determination of "not disabled" without the use of a vocational expert. "[N]ot every malady of a 'nonexertional' nature rises to the level of a 'nonexertional impairment.' The proper inquiry, under *Grant,* is whether a given nonexertional condition affects an individual's residual capacity to perform work of which he is exertionally capable." *Smith v. Schweiker,* 719 F.2d 723, 725 (4th Cir. 1984). The ALJ in the instant case made the general finding that the claimant "has always had the residual functional capacity for light work." (R. at 22.) However, it is not at all clear whether this conclusion was intended to encompass nonexertional conditions, such as constant pain, or merely exertional, strength-related ones such as lifting and standing. The ALJ here did not first make the factual determination whether or not the claimant's pain rose to the level of a nonexertional impairment. Since the ALJ did not explicitly address this factor, which was apparently dispositive in the decision to deny disability benefits, he did not conduct a proper inquiry.

8. Further evidence submitted to the Appeals Council—though not in the record at the time of the ALJ's determination—attested to periodic muscle cramping throughout the patient's body, during movement and rest, although "there are no obvious provoking maneuvers that typically cause this." (R. at 275.) This again indicates the presence of nonexertional limitations.

See *Mondragon v. Apfel*, 3 Fed.Appx. 912, 917 (10th Cir.2001).

## IV.

Other matters raised by the Commissioner are easily resolved. The Commissioner's objection that the burden of proof of disability through step four lies with the plaintiff, not the Commissioner (Defendant's Objections at 7–8), is sustained, to the extent that the Magistrate Judge's Report and Recommendation may have left a contrary impression. *Hunter v. Sullivan*, 993 F.2d at 35. The Commissioner's objection that the ALJ's decision to make alternative findings at step five was appropriate, not an indication of uncertainty over the step four finding (Defendant's Objections at 7–8), is similarly sustained, again, to the extent that the Report and Recommendation was ambiguous about the utility of alternative findings. The Commissioner's unexplicated affirmative defense of res judicata (Answer and Motion for Summary Judgment at 2) is dismissed, as the plaintiff has the right to seek judicial review of the administrative determination, pursuant to 42 U.S.C. § 405(g).

## V.

For the reasons stated above, the court finds that the Commissioner's decision that the claimant could return to his prior work as a dispatcher was not supported by substantial evidence, and the Commissioner's exclusive reliance on the grids to determine availability of jobs for the claimant did not meet legal standards given the absence of an expli cit finding as to whether and how nonexertional pain and obesity may have affected the claimant's residual functional capacity. The court adopts the Magistrate Judge's recommendation to remand the case for further evidentiary proceedings, potentially including the testimony of a vocational expert, but

rejects the Magistrate Judge's recommendation to exclude step four (past relevant work) considerations upon remand. The Commissioner's decision therefore shall be reversed and remanded for further proceedings at the fourth and fifth steps of the disability evaluation process, in accordance with this opinion.

An appropriate Order this day shall issue.